## COLLER *vs.* SHEPARD.

C., residing at Scottsburgh, was the owner of certain goods, which were at Canandaigua, where they had been brought by an express company, and which were subject to the express company's charges, amounting to $4. C. employed M. to bring the goods to Scottsburgh, for him, agreeing to pay him $3 for doing so. M. accordingly went to Canandaigua, got the goods, carried them to Scottsburgh and offered them to C., who refused to receive them. M. then placed the goods in the care of the defendant, instructing him to deliver them to C. on his paying $4 for the charges of the express company which he claimed to have paid, and $3 for M.'s trouble in bringing the goods. In an action by C. against the defendant, to recover the value of the goods; *Held*, that M. had a lien on the goods to the extent of his advance for express charges; that he took the place of the express company in respect to their lien; and that the defendant had a right to retain the goods for him until the $4 was repaid or tendered, or a tender was dispensed with.

And the defendant having replied, on the goods being demanded by C., that "there was a matter between C. and M. which must be settled before C. could have the goods," without specifying what the matter was; *held* that this was to be understood as referring to M.'s legal lien for the express charges, and not to the whole $7 claimed; and that it did not dispense with a tender, or amount to a conversion.

*Held also*, that in the absence of proof that the defendant would have refused to deliver the goods unless the whole $7 was paid, a tender of the amount of the lien was necessary, in order to a conversion.

APPEAL from the Livingston county court. Coller sued Shepard in a justice's court, to recover pay for four boxes of raisins and one box of tobacco, that came to Shepard's possession from one George W. Mitchell, under the following circumstances: Coller was a merchant at Scottsburgh, and was owner of the goods in question, which goods, in April, 1850, were at Canandaigua, where they had been brought by an express company. The goods were subject to the express company's charges for transportation to Canandaigua, amounting to $4. Coller applied to Mitchell to bring the goods from Canandaigua to Scottsburgh for him, and offered to give him $3 if he would do so. Mitchell replied in substance to the application that he did not know as he should go to Canandaigua, but if he went he would bring the goods. Mitchell went to Canandaigua, got the goods, carried them to Scottsburgh and offered them to Coller who refused to receive them. Mitchell then put the

Coller *v.* Shepard.

goods in Bradner & Co.'s warehouse, and told Shepard, the appellant, to let Coller have the goods on his paying $7 charges. The justice rendered a judgment against Coller, the plaintiff below, for costs $8.28. From this judgment Coller appealed· to the county court, where the judgment of the justice was reversed, and a judgment rendered against Shepard for $27.68 costs. Shepard appealed to this court.

*Kelsey & Davis,* for the appellant. The judgment of the county court should be reversed and that of the justice affirmed. I. Because the action is brought against Shepard, who was merely Mitchell's depositary of the goods, before any demand was made of Mitchell for them after Mitchell had once offered to deliver the goods and Coller refused to receive them. Coller having once refused to receive the goods of Mitchell himself, could not maintain an action for them against a third person, in whose hands Mitchell had placed them, without first demanding the goods of Mitchell, and offering to pay for transporting them.

II. Mitchell had a lien upon the goods for his services in transporting them from Canandaigua. He was a private carrier, and consequently bailee for hire, and therefore had a lien. He made a ·contract with Coller, the respondent, that he would bring the goods for $3, if he went to Canandaigua; this is what Mitchell testifies. Coller should have offered to pay the $3 when he demanded the goods; but he did not offer to pay any thing. (*Saltus* v. *Everett,* 20 *Wend.* 267. *Story on Cont.* § 738, 752 *a.*)

III. The delivery of the goods by Mitchell to Shepard for safe keeping was not such a parting with possession as would destroy his lien. (*Ingersoll* v. *Van Bokkelin,* 7 *Cowen,* 670.)

IV. The justice found, as a fact, that there was a contract between Coller and Mitchell that Mitchell should bring the goods if he went to Canandaigua, for $3. The county court found that there was no such contract, and therefore reversed the justice's judgment. In this the county court erred. If there is evidence on both sides the decision of the justice must stand. But there is really no conflict of evidence on this point. The testimony of Mitchell is uncontradicted.

Coller *v.* Shepard.

V. Mitchell also had a lien upon the goods for the money he paid at Canandaigua for express charges.

VI. Shepard did not demand any specific sum when the goods were demanded of him. He merely referred to Mitchell's claim as one that must be settled. Coller was then bound to pay or offer to pay the amount of that lien. If he did not offer enough, or did not offer any thing, the action will not lie. (20 *Wend.* 257. *Story on Contracts,* § 738, 752 *a.*)

*R. P. Wisner,* for the respondent. It is clear from the whole case that Mitchell, the witness, bore no relation to the respondent that gave him a lien upon the property. (*Story on Bailment,* 495, 585.) He could not confer a right upon the appellant to hold the goods. His right, if he had, could not be assigned. (4 *John.* 112.) Mitchell was not a common carrier. If he had a right to retain the goods for advances at Canandaigua, he could not add $3 for his services and retain the goods for the whole amount. There was no contract between the parties. The grounds taken by the appellant when the goods were demanded, cannot be changed. (20 *Wend.* 267.) The goods were demanded before action brought. The first point made by the appellant is not true in fact. The finding of the justice was wrong, even if he found as a fact, that Mitchell should bring the goods. The evidence does not show, nor tend to show, a contract. If such fact does exist, it gives no right to hold the goods. The respondent could recover from any one who refused to deliver the goods. No tender was necessary. Shepard claimed to hold the goods by virtue of the lien that Mitchell had acquired, and until $7 was paid. (6 *Wend.* 609.) A common carrier is well defined by elementary writers, and has a well understood legal definition. No one comes within the class of *common carrier* unless he makes it a *business* to carry goods. (*See Story.*)

*By the Court,* T. R. Strong, J. The evidence upon the question whether there was an agreement between the plaintiff and Mitchell that the latter should go after and bring the goods,

in pursuance of which he obtained and brought them, was conflicting, but it is manifest from the judgment of the justice, he was satisfied the preponderance of evidence on that point was against the plaintiff; and his decision on that subject cannot be reviewed; it is final.

It was proved before the justice, that Mitchell, upon his return with the goods from Canandaigua, took them to and offered to deliver them to the plaintiff, and that the plaintiff refused to receive them, saying he had nothing to do with Mitchell, and that he had sent another man for the goods. Mitchell then placed the goods in the care of the defendant, as a mere depositary of his, instructing the defendant to deliver them to the plaintiff on being paid $7 charges; being $4 for the charges of the express company, and $3 which Mitchell was, by the agreement, to be paid for bringing the goods. It is not expressly stated in the justice's return, that Mitchell paid the express charges, but as no question appears to have been made on that subject, I think the justice might properly conclude that Mitchell did pay them; and that it must be intended, if necessary to support his judgment, that the justice came to that conclusion. The points of the counsel on both sides, submitted to us, assume that Mitchell advanced the express charges.

The only evidence of a conversion of the goods by the defendant is, that when they were demanded of him by the plaintiff, he said there was a matter between the plaintiff and Mitchell which must be settled before the plaintiff could have the goods, not specifying what the matter was. It is insisted by the plaintiff's counsel that he referred to the $7, and that at the least there was no lien for the price to be paid Mitchell for bringing the goods, there being no agreement to that effect, and he not being in the business of a carrier, and that therefore the defendant was guilty of a conversion, by refusing to deliver unless that sum, in addition to the amount of the express charges, was paid. I think Mitchell had a lien on the goods to the extent of his advance for express charges; that he took the place of the company in respect to their lien; and that the defendant might retain them for him until the sum advanced was repaid

Coller *v.* Shepard.

or tendered, or a tender was dispensed with in some way by the defendant. It is not pretended that payment or a tender was made, and I think the evidence does not warrant the position that a tender was dispensed with. There was no plain and explicit refusal by the defendant to deliver unless more than the amount of the advance was paid. The language used by him admits of a construction entirely short of such a refusal, and perfectly consistent with his legal rights. It may fairly be limited in interpretation to Mitchell's legal lien. And it was the right, if not the duty, of the justice, in the circumstances of the case, to give it a construction favorable to the defendant. The evidence to dispense with proof of a tender, when such proof would otherwise be necessary in making out a conversion, should be free from serious doubt. But it is sufficient in this case in regard to this subject, to say that here was a fair question of fact for the justice, and that, making all proper intendments in support of his judgment, it must be intended he regarded the evidence on that point insufficient. The court cannot disturb this conclusion of the justice.

There is ground to infer that the defendant would have refused to deliver unless the whole of the $7 was paid, but it was not proved that he did so, and without such proof, a tender of the amount of the lien was wanting, in order to a conversion.

According to the foregoing views the judgment of the justice was correct. Upon what ground the county court reversed it, does not appear. I think the judgment of the county court should be reversed.

[Monroe General Term, March 5, 1855. *Johnson, Welles* and *T. R. Strong*, Justices.]